## Taylor et al. v. Taylor.

(Decided Oct. 15, 1937.)

E. B. WILSON and N. R. PATTERSON for appellants.

JAMES H. JEFFRIES and E. N. INGRAM for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

Joshua Taylor many years ago settled on the waters of the left fork of Straight creek, in Bell county, on a tract of some 400 acres, and raised a large family. He died in 1925. The appellee, J. M. Taylor, is a son of

Joshua Taylor, and for many years he has resided with his family on a portion of the 400-acre tract mentioned above. On October 18, 1926, appellee, J. M. Taylor, presented and recorded a deed purporting to be executed by the marks of Joshua Taylor and wife, and witnessed by William H. Slusher and A. Y. Gambrel, under date of September 16, 1896. The grantors and both attesting witnesses were dead at the time that deed was presented for record, and the signatures were proven by the testimony of one Tom Jackson and one Wilk Saylor. This suit was filed on September 21, 1932, by certain heirs at law and devisees of Joshua Taylor for the purpose of canceling the aforeseid deed on the ground that it was and is a forgery. A considerable amount of proof was taken, most of which was directed at the circumstances surrounding the parties and the probability or the improbability of the deed having been executed by Joshua Taylor and his wife as claimed by appellee. No attempt was made to secure or introduce the testimony of any expert witnesses, and if any admittedly genuine signatures were introduced for comparison in the court below, they are not made a part of the record on this appeal. Ky. Stats. sec. 1649. The original deed is before us and furnishes very strong evidence of its own antiquity, but very little evidence from which we might do more than deduce a suspicion of its lack of authenticity. We are left, therefore, to the testimony concerning the circumstances which surrounded the parties from the alleged time of the execution of the deed up to the date of its recordation. A number of witnesses testified for appellants that J. M. Taylor paid rent to his father for the use of the parcel of land on which he resided. It was similarly asserted that Joshua Taylor continued to exercise complete dominion over the property up to the date of his death, and on one or more occasions he is reported to have threatened to put J. M. Taylor off the land. Opposed to this, there is the testimony of several witnesses who state that Joshua Taylor told them that he had given J. M. Taylor a deed to the property, and two witnesses testify that they were actually present and saw the deed executed. There is other testimony of like import.

In the last analysis, the case reduces itself simply to a determination of which set of witnesses is to be believed. Faced with the obligation of accepting the stories of one set rather than the other, we cannot say

that the chancellor erred in his selection. Although the transaction is by no means free from suspicion, the evidence rather predominates in favor of the view. taken by the court below.

Aside from the foregoing, it is asserted that the testimony of appellee himself was incompetent under section 606 of the Civil Code of Practice; that the failure to record the deed for a great number of years was itself a circumstance calculated to excite suspicion and to place the burden on the holder of the alleged deed to establish its fairness; and, because of the near relationship, the burden of proof to establish the validity of the transaction was on appellee.

Appellee gave his deposition several times in the case. One, at least, of his depositions was excluded on the ground that he was undertaking to testify for himself in chief after having introduced the evidence of other witnesses. We have carefully examined the portions of his testimony claimed to have been considered by the chancellor, and, while some of the exceptions by appellant are possibly well taken, none of the evidence is more than cumulative, and the facts brought out, if excluded, could not conceivably alter the result.

So far as the second and third points relied on by appellant are concerned, it may be pointed out that the fairness or unfairness of the transaction was not the issue tried. It was not claimed that appellee had procured the deed through unduly influencing his parents, but simply that the deed was a forgery. This was an issue upon which appellants assumed the burden. Granting that the relationship of appellee to his father and mother was such as to place the burden on him of establishing the validity of the transaction, he met that burden, at least to the extent of showing by positive evidence that the deed was genuine. Unless we are to ignore the testimony of appellee's witnesses, we cannot say that the judgment is erroneous. We are unable to discover anything in the record so discrediting to his witnesses as to authorize us to disregard their testimony or to lend greater weight to the evidence introduced for the appellants.

Judgment affirmed.